RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Sandra Curley & Mark Curley | Civil Action No. 05-1304 |
| versus | Judge Tucker L. Melançon |
| JP Morgan Chase Bank NA *successor to Bank One NA* | Magistrate Judge C. Michael Hill |

## MEMORANDUM RULING

Before the Court is defendant's Motion for Summary Judgment [Rec. Doc. 48];

plaintiffs' Memorandum in Opposition thereto [Rec. Doc. 54]; and defendant's Reply

Memorandum [Rec. Doc. 57]. For the reasons set out hereinafter, defendant's Motion [Rec.

Doc. 48] will be GRANTED.

## I. FACTUAL BACKGROUND

From the evidence of record, taken in a light most favorable to plaintiffs, the

pertinent facts are as follows. Sandra Curley and Mark Curley (the "Curleys") are the sole

owners of Supreme Company Wholesaler of Books ("Supreme Company"). (*Complaint,*

para. VI.).  In September 2002, the Curleys submitted a $300,000.00 loan application to

Bank One's Broadmoore Branch in Lafayette, Louisiana. (*Id.* at VII.). Bank One was the

original, now terminated defendant; JP Morgan Chase Bank NA is the proper defendant as

successor in interest by merger with Bank One, NA.  In support of their loan application,

plaintiffs listed assets including but not limited to, real estate valued at more than

$600,000.00, and contracts and purchase orders associated with the operation of the

1

Supreme Company. (*Id.* at IX., XI.).

Defendant's employees, Valencia Goodly and Cindy Pullin, processed the loan

application.  Defendant allegedly did not inform the Curleys of the status of their September

2002 loan application and eventually Mr. Curley contacted Pullin to determine the

application status. (*Id.* at XII-XIII.). At that time, Pullin informed Mr. Curley that the

September 2002 loan application had been denied, and advised him to reapply in six months.

(*Id.* at XIV., XVI.).

In February 2003, the Curleys reapplied for a $200,000 loan from defendant, and

defendant's employees Pullin and Goodley again received and processed the February 2003

application. The February 2003 loan application listed assets including but not limited to real

estate valued at more than $600,000.00. (*Id.* at XVII.-XVIII). Plaintiffs allege that defendant

failed to notify the Curleys about the status of their February 2003 application for more than

three weeks, so finally, Mrs. Curley called defendant to inquire about the application's

status. Goodly informed Mrs. Curley that Pullin had told Goodly that the loan had been

denied. (*Id.* at XXIII-XXIV). Plaintiffs complain that defendant did not provide written

notice of denial nor a written statement of reasons for the denial, nor a written statement

notifying them that they had a right to a written statement of the reasons for denial. (*Id.*).

Defendant claims that plaintiffs' 2003 loan application was denied because the

Curleys had a credit score of less than 620.  Chase credit policy at that time required a credit

score of at least 620 for a loan application to be approved, and no business loan applicant

with a credit score under 620 was offered a loan by Chase. (*Defendant's Statement,* p.1).

2

Plaintiffs believe that the loan was denied because of intentional racial discrimination. Plaintiffs claim that Pullin made comments indicating that "she didn't believe an African American could start a company like Supreme Company and that she wasn't interested in [defendant] providing the requested loan." (*Id.* at XXII.). The Curleys allege that prior to submitting their February 2003 application, the Curleys received financial consulting services provided by Tom Austin of the Louisiana Economic Development Corporation ("LEDC") who informed them that "LEDC would guarantee the loan once the application was processed by [defendant] and submitted to LEDC...LEDC was willing to customize a loan guarantee for the Curleys." (*Complaint,* paras. XIX-XX).

In April 2003, Mr. Curley met with a representative of the Lafayette Economic Development Authority ("LEDA") for the purpose of gaining assistance in securing a loan. The Curleys were referred to Glenn Richard at Bank One, who then referred them to a Mr. Thornton at the University of Louisiana, Lafayette Small Business Development Center. Thornton allegedly assured the Curleys that the Small Business Development Center would assist them in obtaining a loan from defendant.  Plaintiffs allege that the "last time the Curleys spoke to Thornton, he was very upset because his proposal relating to the Curleys' loan application had been denied." (*Id.* at XXVI-XXIX).

In December 2003, the Curleys began working with a Small Business Administrator representative, Charles Achane, who assisted the Curleys in preparing a business plan for submission to Bank One, which was submitted in January, 2004. (*Id.* at XXXII-XXXIII). Achane allegedly said "there was no reason for Bank One to deny Curleys' loan application,"

3

and also allegedly made comments to the effect that "certain of [defendant's] employees did not want Supreme Company to succeed because the Curleys were African Americans and they would obtain substantial profits." (*Id.* at XXXI., XXXIII).

On January 23, 2004, the Curleys submitted a loan application for one-million dollars on behalf of Supreme Company with the Curleys appearing as guarantors. The application listed assets including but not limited to real estate valued at more than $600,000.00 (*Id.* at XXIV.). The January 2004 loan application was denied and plaintiffs again claim that defendant did not, within thirty days of the January 2004 loan application, give the Curleys written notice of denial nor a written statement of reasons for the denial, nor a written statement that the Curleys had a right to a written statement of the reasons for denial. (*Id.* at XXV). Plaintiffs also claim that when Mrs. Curley went to Bank One to retrieve the loan file, it was apparent that the January 2004 loan application had "not been properly processed by Bank One for approval."

Plaintiffs filed suit on July 21, 2005, pursuant to the Equal Credit Opportunity Act, 15 U.S.C. sec. 1691, *et seq.* on the basis that Chase unlawfully discriminated against them on the basis of race, in violation of 15 U.S.C. § 1691, by denying them credit, relative to the 2002, 2003, and 2004 applications. Further, plaintiffs aver that defendant's inactions are in violation of a creditor's statutory duty to provide written notice of adverse action within 30 days of receipt of a completed application for credit, pursuant to 15 U.S.C. § 1691 and 12 C.F.R. § 202.9. Plaintiffs allege that defendant knew, or should have known 1.) "that its employees did not properly review the Curleys' loan application for approval;" 2.) that "its

4

employees denied the Curleys' loan application even though applications of similarly situated Caucasian loan applicants were approved;" and that 3.) defendant "did not exercise reasonable care in supervising its employees to ensure that the Curleys' loan applications were properly reviewed for approval."(*Id.* at XXXIX-XLI).

The Court previously granted in part and denied in part defendant's March 29, 2006 Motion for Partial Summary Judgment [Rec. Docs. 11-12] which contended that plaintiffs' claims of discriminatory denial and failure to notify arising out of the 2002 and 2003 applications were time barred. The Court dismissed plaintiffs' claims arising out of the 2002 application in their entirety (allegations of discriminatory lending practices, and failure to provide written notice of adverse action) and dismissed the claim related to the 2003 loan application for failure to give written notice of the denials under 12 C.F.R. sec 202.9. [Rec. Docs. 30-31].  Summary judgment regarding the allegation of discriminatory lending practices as relates to the 2003 loan application was denied because the Court was unable to determine from the record when the allegedly adverse action of denying the 2003 application giving rise to plaintiffs' claim occurred [Rec. Docs. 30-31].  Defendant now requests summary judgment in its favor for the remaining claims: "failure to give notice within thirty days of the denial of the 2004 application and the discrimination claims based on the 2003 and 2004 loan applications." (*Defendant's Motion, p.2).*  Defendant argues that there is no material issue of fact and that it is entitled to have the entire matter dismissed as a matter of law.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324;

---

[1]

Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

Fed.R.Civ.Pro. 56(e).  The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986);  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56©; *Celotex Corp.*, 477 U.S. at 322.  Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a), states in relevant part, "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)."  For purposes

of the statute, a violation occurs upon the happening of an adverse action by the creditor, *i.e.* the denial of the loan application. 15 U.S.C. § 1691(d)(6).[2]

The ECOA further provides that within thirty days of receipt of a completed application for credit, the creditor must advise the applicant of an adverse action on the application. 15 U.S.C. § 1691(d)(1); *see* 12 C.F.R. § 202.9 for the regulations promulgated thereunder. This can be accomplished by providing the applicant with a written statement of reasons for the adverse action or by notifying the applicant of the action and their right to receive a written statement of reasons for the adverse action. 15 U.S.C. § 1691(d)(2); *see Jochum v. Pico Credit Corp. of Westbank, Inc.,* 730 F.2d 1041 (5th Cir. 1984). The ECOA affords a cause of action for damages against any creditor "who fails to comply with any requirement imposed by the Act." 15 U.S.C. § 1691(e).

**A.    Plaintiffs' claims of racial discrimination arising out of the denial of the 2003 and 2004 loan applications.**

To establish a *prima facie* case of discrimination under the ECOA, a plaintiff must

-----

[2]

The language of the Equal Credit Opportunity Act is closely related to that of Title VII of the Equal Employment Opportunity Act ("EEOA"), 42 U.S.C. § 2000e-2 and was intended to be interpreted similarly. *Bhandari v. First Nat. Bank of Commerce,* 808 F.2d 1082, 1100 (5th Cir.1987) According to the Senate Report on the ECOA:

The prohibitions against discrimination on the basis of race, color, religion or national origin are unqualified.... In determining the existence of discrimination on these grounds ... courts or agencies are free to look at the effects of a creditor's practices as well as the creditor's motives or conduct in individual transactions. Thus judicial constructions of anti-discrimination legislation in the employment field, in cases such as *Griggs v. Duke Power Company,* 401 U.S. 424 (1971), and *Albemarle Paper Company v. Moody,* 422 U.S. 405 (1975) are intended to serve as guides in the application of this Act, especially with respect to the allocations of burdens of proof. S.Rep. No. 589, 94th Cong., 2d Sess. 4-5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 403, 406.

demonstrate that: (1) he is a member of a protected class; (2) that he applied for and was qualified for a loan/credit; (3) despite his qualifications, plaintiff's loan application was denied or plaintiff was denied credit; (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff. *See, e.g.,Bhandari v. First Nat. Bank of Commerce,* 808 F.2d 1082, 1190-91(5th Cir. 1987); *Nia Home Health Care, Inc. v. Whitney Nat. Bank,* 1998 WL 171522, (E.D. La. 1998); *Moore v. U.S. Dept., of Agriculture,* 857 F.Supp. 507, 513 (W.D. La. 1994).

The Court takes judicial notice that as African-Americans, plaintiffs are indisputably members of a protected class. The undisputed facts show that they applied for a loan on behalf of their company from defendant on multiple occasions, specifically at issue are the loan applications dated 2003 and 2004. Defendant contends that plaintiffs cannot carry their burden of proof to establish a prima facie case of discrimination because the objective documented evidence reveals that plaintiffs were not sufficiently qualified for a loan. Defendant points to its racially neutral lending standards and policies, under which plaintiffs and all others similarly situated, (*i.e.* with a credit score of less than 620), would be denied the requested loan.

Plaintiffs have the burden to come forward with evidence that raises a genuine issue of material fact concerning each element of her prima facie case of unlawful discrimination on the basis of race. A plaintiff may prove a claim of racial discrimination through direct evidence or circumstantial evidence. *See Russell v. McKinney Hospital Venture,* 235 F.3d 219, 222 (5th Cir. 2000); *Urbano v. Continental Airlines,* 138 F.3d 204, 206 (5th Cir. 1998).

9

"Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." *Brown v. East Mississippi Electric Power Ass'n,* 989 F.2d 858, 861 (5th Cir. 1993); *Brady v. Ft. Bend County,* 145 F.3d 691, 712 (5th Cir. 1998). When a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested [employment] action, the burden of proof shifts to the [defendant] to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor. *Brown,* 989 F.2d at 861. A plaintiff can also prove a case of race discrimination through circumstantial evidence, using the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Russell,* 235 F.3d at 222. The plaintiff first must establish a *prima facie* case of racial discrimination. The defendant must then respond by producing a legitimate, nondiscriminatory rationale for its decision. Once the defendant offers a legitimate, non-discriminatory reason for the plaintiff's [termination], the burden shifts back to the plaintiff to "raise a genuine issue of material fact as to whether the [employer's] proffered reason was merely a pretext for discrimination." *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 680 (5th Cir. 2001). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the [employer's] asserted justification is false, may permit the trier of fact to conclude that the [employer] unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000).

As central element of their prima facie case, plaintiffs must show that they qualified for the loan. Plaintiffs have not advanced any allegations regarding Chase's requirements

and policies for loans in the amount that plaintiffs sought or in general, nor have plaintiffs pointed to any evidence in the record that would show that a genuine issue of fact exists as to whether they had a credit score and other conditions to qualify under Chase's racially neutral lending requirements. Plaintiffs position that they must have been creditworthy for the loans from Chase because they had previously qualified for and received a disaster loan from the Small Business Association ("SBA") is simply not material to whether the Curleys qualified for the 2003 and 2004 loans from Chase. Not only were the amounts of the loans applied for from Chase substantially larger than that received from the SBA - $200,000 and $1,000,000.00 from Chase versus $15,400.00 from SBA - but there is also no evidence suggesting that the factors the SBA considers for a relatively small dollar disaster loan is similar to that used by Chase and other similarly situated financial institutions.

Defendant, on the other hand, has produced evidence concerning its requirements and policies for loans, as well as to why the Curleys were not creditworthy under those established standards. Defendant submits plaintiffs' loan applications which it states were processed by its underwriters for review and response, pursuant to normal procedures, and that a credit report from an independent reporting service was obtained in conjunction therewith. The Standard Summary Authorization ("SSA"), the official Chase document submitted for loan applications, for the 2003 application reflects that the credit bureau scores as of May 2003 for both Mr. and Mrs. Curley were 557. (*Defendant's Motion*, p.3). The SSA notes "request declined based on credit bureau score of 557 of each individual. They showed a lot of past dues and a couple of accounts closed by credit grantor." Defendant also submits

11

the 2003 Equifax credit report for both Mr. and Mrs. Curley which shows "history of serious delinquencies; balance/limits ratio too high; bank/other revolving accounts; time since delinquency is too recent or unknown; too many inquiries in last 12 months." (*Id.*). Defendant contends that it declined the 2003 application based on these credit reports showing that the Curleys had bad credit. (*Id.*).

Defendant states that it denied the 2004 loan application for one million dollars for the same reasons. Moreover, it is contended that during the time between the 2003 and 2004 applications, the Curleys' credit scores declined substantially. The SSA and credit reports corresponding to the 2004 loan application reflect credit scores of 462 for Mr. Curley and 489 for Mrs. Curley.  Defendant details that according to the criteria used to evaluate credit requests in the SSA, which matches Chase's own criteria, as attested to by Kathleen Comeaux, area manager for Business Banking in Lafayette since 1997, "an application, in order to be approved, without any variances, should have a credit score of no less than 620." (*Defendant's Motion*, p. 6; Deposition of Kathleen Comeaux, pp. 40-41).

Additionally, defendant presents the testimony of plaintiffs' SBA intermediary, Charles Achane, who assisted the Curleys in drafting a business plan and submitting their 2004 application.  He confirmed that he saw the Curleys' 2003 and 2004 credit scores and that they were well below the score of 620 that most financial institutions prefer.  When asked further about his testimony that both Mr. and Mrs. Curley's credit score was less than 620, Achane testified "It was where a bank would say, well, no." He explained, "As an intermediary working with banks for a number of years, I know that's what they look at,

12

credit scores, and that if they're not in the high 600's, then they would say no, regardless of what you may have in way of contacts, because they base that on credit score...The late pays and some delinquent accounts, and, you know, that's the kiss of death." (*Defendant's Motion*, pp. 5-6, Deposition of Charles Achane, pp. 9, 133-136)

Plaintiffs challenge that the credit scores listed in the SSA are "self-serving" and therefore unreliable. However, it is plaintiffs that have the burden of proof to show that they were creditworthy; defendant has not only demonstrated plaintiffs' inability to prove the third prong of its prima facie case but has also established with supporting evidence that the Curleys were indeed not creditworthy.  Other than the conclusory accusation that defendant's evidence is "self-serving," plaintiffs have provided no evidence suggesting that their credit scores were actually higher so that their scores were not below the minimum scores acceptable to Chase , that the credit reports Chase received reflected scores higher than Chase reported on the SSA loan application, or that they qualified for a "variance" under Chase's guidelines. Moreover, Chase submits that plaintiffs' credit application was reviewed in accordance with its standard objective lending procedures and at no point do plaintiffs demonstrate that Chase departed these procedures in denying plaintiffs' loan.

The undisputed facts show that the Curleys did not have a credit score above 620 at the time of either the 2003 or 2004 application.  Plaintiffs have failed to establish that there is a factual dispute as to whether they qualified for either the 2003 or 2004 loans for which they applied.  Thus, the Court finds that plaintiffs cannot establish the creditworthy prong of their prima facie case and defendant has provided a legitimate, nondiscriminatory reason for

denying the loans.

Assuming, *arguendo,* that the Court were to find a disputed question of fact as to whether plaintiffs were qualified to receive credit, the inquiry would not end. This would simply create a presumption that defendant had unlawfully discriminated against plaintiffs. Following the burden-shifting rational used in employment discrimination cases, once a *prima facie* case has been achieved, the presumption places upon the defendant the burden of producing an explanation to rebut the *prima facie* case by producing evidence that the adverse actions were taken for legitimate, nondiscriminatory reasons. *Moore,* 857 F.Supp. at 514. *See also, Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254(1981), *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted and "drops from the case." *Burdine,* 450 U.S. at 255, n. 10. At this point, the plaintiffs must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext for discrimination. *Burdine,* 450 U.S. at 257. Plaintiffs have no direct evidence of discrimination; therefore for plaintiffs to prevail the Court must infer intentional discrimination from circumstantial evidence. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993); *See also Moham v. Steego Corp.,* 3 F.3d 873, 875 (5th Cir.1993); *Moore v. U.S. Dept. of Agriculture,* 857 F.Supp. 507, 513 -514 (W.D.La.1994)

The record before the Court does not reflect that defendant intentionally discriminated against plaintiffs in deciding to deny the 2003 or the 2004 loan applications.  The objective evidence offered by Chase clearly shows legitimate, non-discriminatory reasons for the

denial of both the 2003 and 2004 loans. Plaintiffs must bring forth evidence that the reasons presented were a pretext for discrimination and the decision was made with discriminatory motive. *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995).

Plaintiffs have not brought forth any evidence that the defendant's stated and documented reasons for denying either the 2003 or 2004 loans were in fact pretextual or that intentional discrimination motivated the decision. Moreover, plaintiffs have not presented any evidence that others in similar credit situations were extended credit or given more favorable treatment than them. Plaintiffs unsupported allegations that defendant had a practice of granting loans to similarly situated applicants or that defendant's employees were motivated by racial discrimination in reviewing the loans applications is immaterial and does not demonstrate pretext. At this summary judgment stage, the Court must be provided with documentary evidence in support of these allegations and create a factual dispute.

Based on the above, the Court finds that, as a matter of law, plaintiffs have not shown that they qualified for the sought after loans or that despite their qualifications, they were denied credit. Thus, plaintiffs cannot prove a *prima facie* case of discrimination under the ECOA and they have failed to raise a genuine issue of material fact as necessary to defeat summary judgment.

**B.    Plaintiffs' claim that defendant failed to provide proper notice of the adverse credit determination.**

As to the 30-day notice requirement of the ECOA, 15 U.S.C. § 1691(d)(1), defendant argues that it provided valid proper notice under the provisions of 12 C.F.R. § 202.9 dealing

15

with certain business credit applicants.  It is undisputed that the 2004 loan was for business

credit and the business plan submitted by the Curleys, as prepared by Charles Achane of the

SBA, reflects gross revenues under $1 million dollars. (*Defendant's Motion*, p.12).

The requirements for providing notice to business credit applicants with a business

that had gross revenues of  $1 million dollars or less in its preceding fiscal year is governed

by 12 C.F.R. § 202.9(a)(3)(1).  It allows that:

> (A) The statement of the action taken may be given *orally* or in writing, when adverse
> action is taken;
> (B) *Disclosure of an applicant's right to a statement of reasons may be given at the
> time of application*, instead of when adverse action is taken, provided the disclosure
> contains the information required by paragraph (a)(2)(ii) of this section and the
> ECOA notice specified in paragraph (b)(1) of this section. *Id.* (emphasis added)

12 C.F.R. § 202.9(a)(2)(ii) then requires:

> (ii) A disclosure of the applicant's right to a statement of specific reasons within 30
> days, if the statement is requested within 60 days of the creditor's notification. The
> disclosure shall include the name, address, and telephone number of the person or
> office from which the statement of reasons can be obtained. If the creditor chooses to
> provide the reasons orally, the creditor shall also disclose the applicant's right to have
> them confirmed in writing within 30 days of receiving the applicant's written request
> for confirmation.

(b)(1) details the "form of ECOA notice and statement of specific reasons:"

> To satisfy the disclosure requirements of paragraph (a)(2) of this section regarding
> section 701(a) of the Act, the creditor shall provide a notice that is substantially
> similar to the following: The Federal Equal Credit Opportunity Act prohibits creditors
> from discriminating against credit applicants on the basis of race, color, religion,
> national origin, sex, marital status, age (provided the applicant has the capacity to
> enter into a binding contract); because all or part of the applicant's income derives
> from any public assistance program; or because the applicant has in good faith
> exercised any right under the Consumer Credit Protection Act. The Federal agency
> that administers compliance with this law concerning this creditor is [name and
> address as specified by the appropriate agency listed in appendix A of this regulation].

Regarding the "statement of the adverse action taken" notice requirement, defendant

16

claims that the undisputed facts show that the Curleys were orally notified that the 2004 loan application was denied, that such notification is legally sufficient under 12 C.F.R. § 202.9(3)(1)(A) and thus the lack of written notification is immaterial. Specifically, according to defendant, Mrs. Curley was notified once through her "agent," Charles Achane, the Small Business Administrator representative who assisted the Curleys in preparing the 2004 loan application and accompanying business plan. Upon contacting defendant regarding the status of the loan, Achane was informed by defendant that the Curleys' loan application had been declined and Achane relayed that information to Mrs. Curley.  Defendant also posits that Mrs. Curley was personally informed that the loan had been declined by Jason Habbit, defendant's employee who completed the Curleys' 2004 application, when she picked up the loan application file from him. (*Defendant's Motion*, p. 5.)

Plaintiffs dispute that either oral communication provided legally sufficient notice that the loan had been denied.  Plaintiffs argue that neither Habbit nor any other of defendant's representatives unequivocally and directly informed either of them, as the applicants, that the loan had been declined. While plaintiffs do not dispute that Achane informed Mrs. Curley that he had been told that the loan had been declined, plaintiffs contend that this notice via Achane was not legally sufficient because the notice of denial did not come directly to either one of them from defendant or its representatives.

A review of Mrs. Curley's deposition testimony establishes that Achane first contacted defendant within a few days of the Curleys submitting their 2004 loan application to determine whether the application had been sent out and was going to be processed.

17

(Defendant's Exhibit B, Deposition of Sandra Malveaux Curley p. 177-178).Upon learning that it had been denied, Achane informed Mrs. Curley that the loan had not been processed. (Id.). It was at that point, acting on knowledge of the denial gained from Achane, that Mrs. Curley went to Chase to pick up the loan packet from Habbit, defendant's employee and the banker who had accepted 2004 application.  Pullin, defendant's underwriter who handled the loan application, had returned the Curleys' file to Habbit. (*Id.*)  Mrs. Curley testified in her deposition that approximately one week passed from the time the application was filled out and submitted until the time she picked it upon being informed its denial. Mrs. Curley testified that when she picked up her file from Habbit he shook his head and said that he was sorry.  (*Defendant's Motion,* p.12; Deposition of Sandra Curley, p. 177; *Plaintiffs' Memorandum,* p. 5, Exhibit D).

It is undisputed that Mrs. Curley knew that the loan had been declined when she picked up her loan file from Habbit at Chase Bank within one week after it had been submitted.  The parties dispute whether the manner and means in which Mrs. Curley learned of the denial constitute sufficient notice as required by 12 C.F.R. § 202.9, but neither side presents any case law in support of its position and the Court's own research on the issue reveals a dearth of jurisprudential guidance.  The Court must determine whether the described communications were "notice" within the meaning of 15 U.S.C. §1691(d) and if so, whether either instance of verbal notice is sufficient under the law.

The undisputed evidence leads this Court to conclude that defendant satisfied its ECOA notice obligation by providing notification to the plaintiffs through their agent,

Achane and direct communication with Mrs. Curley.  While Achane was not the applicant, he was an involved third-party participant to the transaction.  He made a specific inquiry on behalf of the applicants regarding the status of the loan, and the Court must assume that he had some official known interest in the loan application and affiliation with the plaintiffs since defendant provided him with information regarding the loan. *See Taylor v. Nelson,* 2006 WL 266052 (E.D. Pa. 2006).  The evidence also shows that Achane notified the plaintiffs of the declination and that plaintiffs were well aware that the loan had been denied within a reasonable time.  Finally, Habbit's "I'm sorry" statement in the context of returning the application file to Mrs. Curely clearly conveyed the meaning that the application had been declined.

There is, therefore, no genuine issue of material fact that to the extent that defendant provided plaintiffs with timely notification of adverse action, defendant satisfied its obligation under the ECOA. The two verbal communications clearly informed plaintiffs that the loan had been denied and provided sufficient notice and disclosure under law and within the meaning of 8 U.S.C. §1691(d).

As for the other notification requirements, written disclosure of the right to obtain a statement of reasons for adverse action taken, as required by 12 C.F.R. § 202.9(a)(3)(i)(B) and (b)(1), may be given either at the time the adverse action is taken or at the time of the application if the notification contains the statement contained in (b)(1). Defendant contends that the 2004 Business Credit Application and Agreement signed by the Curleys in requesting the 2004 loan provides the required substantive notice. (*Defendant's Motion,* p.

19

13, Exhibit 30).

The Court has reviewed the notice contained in defendant's Business Credit Application and Agreement form that was purportedly signed by plaintiffs, attached to defendant's Motion as Exhibit 29, and finds that it properly notifies the applicant that if the application is denied he has the right to a written statement of the specific reasons for denial, a right to know the information obtained in the credit file received from any consumer reporting agency, and discloses that the ECOA prohibits creditors from discriminating against applicants. Thus the notification in the Business Credit and Application constitutes a legally valid and proper notice under 8 U.S.C. §1691 and 12 C.F.R. § 202.9(a) and (b). The issue then is whether a genuine issue of fact exists regarding whether plaintiffs ever received this notification.

Defendant claims that plaintiffs not only signed the application and agreement containing the notice, but that defendant gave plaintiffs this document to keep shortly after it was signed. (*Defendant's Motion,* p. 14).  In support of its contention that plaintiffs constructively received the notice, defendant submits a copy of the Business Credit Application and Agreement form that was purportedly signed by plaintiffs in January 2004. The Court has reviewed the form and notes that both of plaintiffs' signatures are affixed thereto in all of the called for sections, which are one the first and second page of the Business Credit Application. (*Defendant's Motion*, Exhibit 30).  However, the required notification and disclosure statements are contained on what apparently is page 3 of the application, and on which there is no signature line or signature.

20

It is for this reason that plaintiffs claim defendant did not meet its legal obligation. Plaintiffs allege that the page containing the notice of right to written reasons for denial was not attached to the Business Credit Application form when they received it; that essentially the form was missing the third page. (*Plaintiffs' Memorandum,* p. 4-6). Moreover, plaintiffs contend that the document actually signed by the Curleys is not the document attached to defendant's instant Motion for Summary Judgment, nor was it attached to Mrs. Curleys deposition as defendant purports. Instead, plaintiffs contend that the attached Exhibit E, which is also defendant's Exhibit 30, is a copy of the only document that they received in connection with the 2004 loan application, and that document does not contain the notice of right to written reasons.

Defendant responds that the document identified as plaintiffs' Exhibit E and defendant's Exhibit 30 was not the only document received and filled out by plaintiffs and submitted to Chase. Defendant provides Mrs. Curley's deposition testimony of July 5, 2006, in which she acknowledges that she completed the documents marked as defendant's Exhibits 29 and 30 in connection with her loan request, and received the original of Exhibit 29 back from Habbit when she picked up the loan file on its denial. (*Defendant's Reply,* Exhibit p. 25).[3]  At the time of the deposition, Mrs. Curley also admitted that she still had the originals of the loan application documents in her possession, although she refused to attach the originals to her deposition so

---

[3]

Mrs. Curley was deposed twice. The second time occurred on July 5, 2006 for the purpose of reviewing the original Business Credit Application and Agreement filled out in connection with the 2004 loan request.

copies were made, and which were in fact attached as defendant's Exhibits 29 and 30.   The

Court notes that the document identified as defendant's Exhibit 29 contains the Curleys'

respective signatures and the required notice, as discussed above. *Supra*, p. 16.

In light of Mrs. Curley's deposition testimony in relation to the documents bearing

plaintiffs' respective signatures, and specifically the acknowledgments Mrs. Curley's made

regarding the documents marked as defendant's Exhibits 29 and 30, the Court must conclude that

plaintiffs did indeed receive the required written notice at the time of filling out the application.

Plaintiffs have not proffered any supporting evidence to create an issue of fact in response to

Mrs. Curley's admissions in her deposition regarding the documents.

The undisputed facts support a dismissal of Curleys' claims regarding defendant's failure

to provide proper notice of the adverse credit determination and plaintiffs' right to obtain written

reasons for the denial pursuant to ECOA, 15 U.S.C. § 1691(d)(1).

## IV. CONCLUSION

Based on the record before the Court and the reasons stated above, the Court finds that

plaintiffs cannot prove a prima face case of discrimination in lending as required under the Equal

Credit Opportunity Act, 15 U.S.C. § 1691.  Therefore, as a matter of law, defendant is entitled to

summary judgment on the claims of unlawful discrimination arising from the denial of the 2003

and 2004 loan applications.  The Curleys' claims arising out of 12 C.F.R. § 202.9 also fail as a

matter of law as the Court finds that there is no issue of fact that defendant provided plaintiffs

with the required notifications.  Accordingly, defendant's Motion for Summary Judgment [Rec.

Doc. 8] will be GRANTED, and plaintiffs' claims asserted against them will be DISMISSED.